**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| STATE OF NEW JERSEY, *et al.*,<br><br>              Plaintiffs,<br><br>*v.*<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, *et al.*,<br><br>              Defendants. | Civil Action No.<br>25-cv-404-JJM-AEM |

**JOINT STATUS REPORT**

In accordance with the Court's June 18, 2026 Text Order, the parties have met and conferred and respectfully file this Joint Status Report, including a status of the current posture of the case as well as suggestions for a plan on how best to proceed.

<u>Status of the Case</u>

1.     By way of background, the United States Department of Justice ("DOJ")'s Office of Justice Programs ("OJP") is DOJ's primary grantmaking component, and contains multiple program offices, including the Office for Victims of Crime ("OVC"), the Bureau of Justice Assistance ("BJA"), the Office of Juvenile Justice and Delinquency Prevention ("OJJDP"), the Bureau of Justice Statistics ("BJS"), and the National Institute of Justice ("NIJ").

2.     On August 18, 2025, Plaintiff States filed a Complaint challenging language contained in various Notices of Funding Opportunity ("NOFOs") for Fiscal Year ("FY") 2025 OVC grants administered by OJP stating that "[a]ny program or activity that, directly or indirectly, violates (or promotes or facilitates the violation of) federal immigration law (including 8 U.S.C. § 1373) or impedes or hinders the enforcement of federal immigration law—including by failing to comply with 8 U.S.C. § 1373, give access to DHS agents, or honor DHS requests and provide requested notice to DHS agents" is "out of the program scope and will not be funded" (the "Challenged Provision"). *See* Dkt. 1.

1

3.     On October 21, 2025, the Court entered the parties' stipulation extending Defendants' time to respond to the Complaint until December 19, 2025.

4.     On December 22, 2025, the Court entered the parties' stipulation extending Defendants' time to respond to the Complaint until January 20, 2026.

5.     In late 2025 and early 2026, OJP issued NOFOs for dozens of additional OVC, OJJDP, BJA, BJS, and NIJ formula and competitive grant programs that contain provisions substantially similar to the Challenged Provision.

6.     On February 13, 2026, the Court entered the parties' Joint Stipulation and Motion to Hold Case in Abeyance ("Joint Abeyance Motion"), Dkt. 45, staying all pending deadlines and holding this case in abeyance up to and including the earlier of (i) one hundred and twenty (120) days from the date the Court rules on the motion, *i.e.*, June 13, 2026, or (ii) upon the request of any party that the abeyance be lifted.

7.     In the Joint Abeyance Motion, Defendants represented that "for any FY 2025 NOFOs released by OJP or any of its program offices, any Challenged Provision or substantially similar provision that appears in a NOFO may or may not be included in the final award issued to Plaintiff States, and the determination to include the Challenged Provision or substantially similar provision in any final grant award will be made at the time the award is issued." Dkt. 45, ¶ 5.

8.     Defendants further stipulated in the Joint Abeyance Motion that they "will not apply any Challenged Provision, or any substantially similar provision, to any of these awards by any other means, including, but not limited to, by adding language to the DOJ Grants Financial Guide that would apply the substance of the Challenged Provision or of a substantially similar provision to these awards." Dkt. 45, ¶ 6. Based on this stipulation, Plaintiffs agreed not to pursue their claims with respect to any FY 2025 OVC grants as to which Plaintiff States had received award agreements that omit the Challenged Provision.

9.     Plaintiffs stated in the Joint Abeyance Motion that they "intend to pursue claims against the inclusion of the Challenged Provision or any substantially similar provision in any forthcoming award agreement for any grant administered by OJP or any of its program offices.

2

Plaintiffs therefore intend, upon issuance of any such award agreement, to amend their complaint to (a) remove claims concerning the FY 2025 OVC grants as to which any Plaintiff State has received an award agreement that does not contain the Challenged Provision, in reliance on the stipulation set forth in paragraph 6 [of the Joint Abeyance Motion]; and (b) add claims concerning FY 2025 grants administered by OJP or any of its program offices as to which any Plaintiff State receives an award agreement that contains the Challenged Provision or any substantially similar provision." Dkt. 45, ¶ 7.

10.     The stipulated abeyance allowed a period of 120 days for: (a) Defendants to issue additional FY 2025 OJP grant awards; (b) Plaintiffs to review the grant awards; and (c) the parties to confer regarding the scope of the litigation following these developments.

11.     The following relevant developments have occurred since the commencement of the abeyance in this matter.

12.     OJP has issued awards to Plaintiffs for all FY 2025 OVC grants for which Plaintiff States applied. *See* Dkt. 1. Although the NOFOs for those grant programs contained the Challenged Provision, the subsequent award agreement for each of the corresponding grant awards issued to Plaintiff States did not contain the Challenged Provision or any substantially similar provision.

13.     In May 2026, OJP issued NOFOs for multiple FY 2026 OVC grant programs, including formula grant programs, to which Plaintiff States have applied or intend to apply. The NOFOs for these FY 2026 OVC grant programs all contain the Challenged Provision. In an email to Plaintiffs' counsel dated June 16, 2026, counsel for the government stated, among other things, "The NOFOs are not final reflections of final awards, and thus, the immigration-related provisions listed in the NOFOs may or may not be included in final awards. The determination about what conditions to include in final awards will be made at the time final awards are issued. . . ."

14.     OJP has issued awards to Plaintiffs for some, but not all, of the FY 2025 BJA grants for which Plaintiff States applied. Although the NOFOs for those BJA grant programs contained the Challenged Provision, the subsequent award agreement for each of the corresponding BJA

grant awards issued to Plaintiff States as of the date of this report does not contain the Challenged Provision or any substantially similar provision.

15. OJP has not yet issued awards to Plaintiffs for any of the FY 2025 OJJDP, BJS, or NIJ grants for which Plaintiff States applied. The NOFOs for those grant programs all contain the Challenged Provision.

16. Plaintiff States have submitted applications for dozens of FY 2025 OJP formula and competitive grant programs that were announced by NOFOs containing the Challenged Provision, and as to which awards have not yet been issued.

17. Defendants are unable to confirm at this time the schedule for the issuance of the outstanding FY 2025 awards for the FY 2025 OJP grants for which Plaintiff States have applied. In addition, it is currently unknown whether the Challenged Provision will be omitted from the award agreements for those grant awards when they are issued.

18. The abeyance in this case expired on June 13, 2026, and Defendants' deadline to respond to the Complaint under the current schedule would be June 26, 2026. The parties agree that this deadline should be extended, although they differ as to proposals for how this case should proceed going forward. The parties' respective positions are set forth below.

<u>Plaintiffs' Proposal for Management of the Case</u>

19. Plaintiffs propose that the Court continue to hold this case in abeyance until the earlier of (a) Plaintiffs notifying the Court of the issuance of an award for a FY 2025 OJP grant for which any Plaintiff State has applied that contains the Challenged Provision; or (b) Plaintiffs notifying the Court that OJP has issued all FY 2025 grants without including the Challenged Provision in any award to any Plaintiff State.

20. Based on historical practice, OJP ordinarily would ordinarily have issued all or nearly all of its grant awards by the close of the federal fiscal year, which was September 30, 2025 for FY 2025. Accordingly, Plaintiffs believed that the stipulated abeyance would provide Defendants ample time to complete the issuance of FY 2025 OJP awards. Plaintiffs are unaware

of any prior fiscal year where OJP has taken as long as it has in FY 2025—over eight months beyond the close of the fiscal year—in completing the issuance of its grant awards.

21.    Consistent with their position as stated in the Joint Abeyance Motion, Plaintiffs intend to pursue claims against the inclusion of the Challenged Provision as to any grant administered by OJP or any of its program offices. Plaintiffs therefore intend, upon issuance of any an award agreement that contains the Challenged Provision, to amend their complaint to (a) remove claims concerning the FY 2025 OVC grants; (b) add claims concerning the FY 2026 grants administered by OJP or any of its program offices that were announced by NOFOs containing the Challenged Provision; and (c) add claims concerning FY 2025 grants administered by OJP or any of its program offices as to which any Plaintiff State receives an award agreement that contains the Challenged Provision or any substantially similar provision.

22.    Defendants' issuance of the NOFOs containing the Challenged Provisions constitutes final agency action and makes for a ripe dispute. *See Freedom Network USA v. Trump*, --- F. Supp. 3d ---, No. 25 C 12419, 2026 WL 800392, at *9, *19-20 (N.D. Ill. Mar. 23, 2026) (holding that claims seeking to vacate and enjoin the Challenged Provision, among other conditions, as set forth in a FY 2025 OJP NOFO "are ripe for adjudication now" and involve "final agency action" because OJP's placement of the conditions in the NOFO "marks the consummation of the agency's decision regarding the evaluation criteria for grant applications and has an immediate effect on" applicants, even if "the NOFO conditions may not ultimately attach to the awards"); *see also Illinois v. FEMA*, 801 F. Supp. 3d 75, 89 (D.R.I. 2025) (holding that standard terms "conditioning FY 2025 funding on immigration enforcement compliance" are final agency action "even if the final decision to award the funds and issue the NOFOs is still pending").

23.    However, filing an amended and/or supplemental complaint at this time would not serve judicial economy. Plaintiffs have agreed to hold the case in abeyance to allow time to clarify and narrow the disputes in the litigation, and to conserve the resources of the Court and the parties. Because Defendants may continue, as they have in issuing each OJP grant award thus far, to reverse their earlier decision as indicated in the grant's NOFO to attach the Challenged Provision

to the grant, Plaintiffs believe that holding the case in abeyance will spare the Court potentially unnecessary litigation over the lawfulness of the Challenged Provisions.

24.     In addition, because Defendants are unable to provide a schedule for the issuance of the outstanding—and now significantly behind-schedule—FY 2025 OJP awards, judicial economy would best be served by extending the abeyance until either (a) Plaintiffs notify the Court of the issuance of an award for a FY 2025 OJP grant for which any Plaintiff State has applied that contains the Challenged Provision; or (b) Plaintiffs notifying the Court that OJP has issued all FY 2025 grants without including the Challenged Provision in any award to any Plaintiff State.

25.     Defendants suffer no prejudice by continuing to keep the case in abeyance.

26.     In the alternative, should the Court determine not to keep the case in abeyance, Plaintiffs propose a schedule that allows for (a) Plaintiffs to file an amended and/or supplemental complaint by August 3, 2026; (b) Defendants to answer or file a motion to dismiss by September 2, 2026; (c) Plaintiffs to file an opposition to any motion to dismiss by October 2, 2026; and (d) Defendants to file a reply by October 16, 2026.

Defendants' Proposal for Management of the Case

27.     Defendants object to the language in Paragraph 22 above, where Plaintiffs claim that Defendants have "reverse[d] their earlier decision as indicated in the grant's NOFO to attach the challenged Provision to the grant[.]" OJP does not make such "decision[s]" when it releases NOFOs. From the outset of this litigation, Defendants have maintained the position that its NOFOs are not final reflections of final awards, and thus, the immigration-related provisions listed in the NOFOs may or may not be included in final awards. The determination about what conditions to include in final awards will be made at the time final awards are issued. The NOFOs are similar to a "heads up" advising potential applicants about what terms might be in the awards, but they do not have legal effect on their own. Rather, the award offers contain the formal grant final terms and conditions.

28.     Defendants also disagree with Plaintiffs' citations to *Freedom Network USA v. Trump*, --- F. Supp. 3d ---, No. 25 C 12419, 2026 WL 800392, at *9, *19-20 (N.D. Ill. Mar. 23,

2026), and *Illinois v. FEMA*, 801 F. Supp. 3d 75, 89 (D.R.I. 2025), for the proposition that their challenges to the NOFOs in the operative complaint, Dkt. 1, were ripe to begin with, or for the proposition that their potential challenges to OJP's still-pending NOFOs for other FY 2025 and FY 2026 grant programs are ripe. The facts presented in the instant case are not analogous to those cited. There is no indication here that the Challenged Provision has "influence[d] the process" or "will influence the process by which grant applicants are selected for a grant offer." *Freedom Network*, 2026 WL 800392, at *8. And here, the NOFOs at issue do not contain corresponding requirements that applicants certify their agreement with or compliance with the Challenged Provision in order to submit their applications or be considered for awards. *Cf. id.* at *19 (addressing NOFOs' certification requirements that operated as conditions placed upon grant applicants); *Illinois*, 801 F. Supp. 3d at 81–82 (addressing requirements placed on all DHS grants that applicants certify compliance with conditions related to immigration enforcement).

29.    Based on the facts specific to the OJP grants at issue, Defendants maintain that Plaintiffs' claims in the operative complaint were not ripe for adjudication, and Defendants assert that claims that Plaintiffs might raise in an amended complaint concerning other FY 2025 and FY 2026 OJP grant programs will be similarly unripe. *See Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004) (holding that until the agency "completes its review and reaches a decision [on the grant award], there has been no final agency action . . . and the matter is not ripe for judicial review"); *Rattlesnake Coal. v. EPA,* 509 F.3d 1095, 1103-04 (9th Cir. 2007) (holding that there was no "final agency action . . . until the [agency] ha[d] reviewed a grant application and decided to disburse the funds"); *Karst Env't Educ. & Prot., Inc. v. EPA,* 403 F. Supp. 2d 74, 81 (D.D.C. 2005) (holding that there was no final agency action when the agency "ha[d] not yet decided whether to award the grant"), *aff'd* 475 F.3d 1291, 1295 (D.C. Cir. 2007); *Planned Parenthood of Wisconsin, Inc. v. Azar*, 316 F. Supp. 3d 291, 303 (D.D.C. 2018), *vacated and remanded*, 942 F.3d 512 (D.C. Cir. 2019) (explaining that a "funding opportunity announcement" was "simply a solicitation of offers, kicking off an application process that will result in legally binding contracts only after offers are accepted and grants are awarded").

30.     To the extent the claims as pled in the operative complaint, *see* Dkt. 1, *could have* ripened, they did not, as Defendants have issued all FY 25 OVC grant awards, and none of the awards issued to Plaintiff States contained the Challenged Provision. Alternatively, even if the Court were to agree with Plaintiffs that those claims were ripe at the outset, those claims have since become moot. Accordingly, Plaintiffs should voluntarily dismiss their complaint. To the extent Plaintiffs wish to challenge pending FY 2025 NOFOs or FY 2026 NOFOs that were not identified in the operative complaint, Plaintiffs should amend their complaint to do so.

31.     Defendants do not agree to continue holding this case in abeyance when the claims in the operative complaint have all been mooted (or, more accurately, ultimately did not and cannot ripen). Defendants do not believe this case should remain open on the Court's docket simply to address the possibility that claims concerning other FY 25 and FY 26 NOFOs—*not* pled in the operative complaint—may ripen in the future.

32.     Defendants would agree to a schedule in which Plaintiffs voluntarily dismiss and/or file an amended complaint by August 3, 2026, and Defendants file a motion to dismiss by September 2, 2026.

Dated: June 25, 2026                          Respectfully submitted,


JENNIFER DAVENPORT                    BRETT A. SHUMATE
ACTING ATTORNEY GENERAL               Assistant Attorney General
OF NEW JERSEY                         Civil Division

/s/ *Mayur P. Saxena*                 ANDREW WARDEN
                                      Assistant Branch Director

MAYUR P. SAXENA
(NJ Bar #036502006)                   /s/ *Natalie M. Villalon*
Assistant Attorney General
New Jersey Office of the Attorney     NATALIE M. VILLALON
General                               (DC Bar #90015127)
124 Halsey Street, 5th Floor          Trial Attorney
Newark, NJ 07101                      DOJ, Civil Division,
(609) 696-5365                        Federal Programs Branch

8

Mayur.Saxena@law.njoag.gov
*Attorneys for the State of New Jersey*

*Counsel for Plaintiffs*

1100 L Street, N.W.
Washington, D.C. 20005
Phone: (202) 860-9963
Natalie.M.Villalon@usdoj.gov

*Counsel for Defendants*

9